# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| DONAVONNIE Y. BRITTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:13-1477 |
| | § | |
| CAROLYN COLVIN, ACTING | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

In this case seeking judicial review of denial of Supplemental Security Income

benefits, Plaintiff Donavonnie Y. Britton has filed a Motion for Summary Judgment

[Doc. # 15].  Defendant Carolyn W. Colvin, Acting Commissioner of Social Security,

also has filed a Motion for Summary Judgment [Doc. # 16].  The motions now are ripe

for decision.  Having considered the parties' briefing, the applicable legal authorities,

and all matters of record, the Court concludes that Defendant's Motion should be

**granted** and that Plaintiff's Motion should be **denied**.

I.    **BACKGROUND**

A.    **Procedural Background**

Britton filed an application for Supplemental Security Income ("SSI") benefits with the Social Security Administration ("SSA") on May 26, 2010, alleging disability beginning July 1, 2009.  Her claim was denied initially and on reconsideration. Britton then requested an administrative hearing before an Administrative Law Judge ("ALJ") to review the denial of benefits.

On May 1, 2012, ALJ Rafael Lugo-Vilanova held a hearing.  R. 30-43.  Britton was represented by counsel, and a vocational expert appeared and testified.  In a decision dated May 22, 2012, the ALJ denied Britton's request for benefits.  R. 15-29. On March 11, 2013, the Appeals Council denied Britton's request for review, rendering the ALJ's decision final.  R. 1-6.

Britton filed this case on May 20, 2013, seeking judicial review of the Commissioner's denial of her claim for benefits.  Complaint [Doc. # 1].

B.    **Factual Background**

Britton claims disability based on bipolar disorder/depression, substance abuse, and pain in her left leg and hip.  Although she claims disability beginning on July 1, 2009, the medical treatment records she has submitted begin in May 2011.

At her administrative hearing on May 1, 2012, Britton testified that she had past

problems with abuse of drugs and alcohol.  R. 37.  She is a single mother to three children, and was homeless at the time of the hearing, staying with friends when possible.  R. 33-34, 40.

Britton was incarcerated for food stamp theft in 2010 and was on probation until 2013.  R. 193.  On October 28, 2010, while on probation, she was placed in a Harris County residential drug treatment program because she had provided authorities with a "dirty" urine sample.  R.  37.  She testified that she had not used illegal drugs since her admission to a drug treatment program on October 28, 2010.  She lived at the treatment facility for six months and, in April 2011, was transferred to another residential drug treatment program called New Hope.  She was discharged from New Hope in September 2011 and entered a drug treatment center at Career and Recovery Resources, from which she graduated in April 2012.  R. 38-39.

In May and June 2011, apparently while living at the New Hope treatment facility, Britton was treated at the MLK Clinic in Houston.  R. 251-64.  On May 27, 2011, Britton received a physical examination and reported that her drug abuse was in remission.  The examination was "generally normal," and records indicate that Britton "appear[ed] well, alert and oriented . . ., pleasant, cooperative."  R. 257.  She was instructed to follow up in one year.  On June 29, 2011, Britton again was seen at the MLK Clinic and complained of anxiety, depression, sleeping problems, and

difficulty coping after being off drugs.  She stated that she had been sober for nine months, and that her depression had begun before her drug use.   Britton was given prescriptions for Celexa and Seroquel for treatment of bipolar disorder and depression, and trazodone for her insomnia.  She was instructed to follow up in one month and was given a referral to Behavioral Health with an appointment for August 24, 2011. R. 254-55.  There is no evidence in the record of these follow-up appointments.

Britton received two consultative examinations in June 2011.  The first was conducted by Meagan Houston, Ph.D., a licensed psychologist.  R. 190-96.  Dr. Houston observed that Britton was well-groomed and cooperative.  Britton stated that in 2010, while incarcerated in Harris County jail, she had been diagnosed with bipolar disorder; however, no past medical records were available for Dr. Houston to review. R. 191.[1] Britton reported symptoms including mood swings, anxiety attacks, blackouts, paranoia, impulsivity, and fighting with others, and stated that psychotropic medications helped with her symptoms.  She reported attending sessions at New Hope's substance abuse program.  She stated that she isolated herself because she did not get along well with others, that she had problems with authority figures because she did not like people telling her what to do, and that she did not cope well with change.  R. 192.   She reported no mental problems with simple tasks, but some

---

[1]        No records of treatment or diagnosis from the Harris County Jail are before the Court.

difficulty with complex tasks requiring several steps because she could not read or write well.  She further stated that, over the past ten years, she had held approximately six cashier positions in various settings, but had "quit these jobs due to becoming frustrated with colleagues and supervisors."  R. 193.

Dr. Houston noted that Britton had good eye contact and responded appropriately without difficulty understanding instructions or questions.  Her thought process appeared normal and intact, with no evidence of a thought disorder.  Britton denied delusions, paranoia, suicidal ideation, and hallucinations.  Her mood was dysphoric and she described depressive symptoms including insomnia, sadness, helplessness, hopelessness, worthlessness, and a lack of energy.  Dr. Houston assessed Britton as oriented, with intact memory, without attention difficulties, with adequate language abilities and average intelligence, and with fair judgment.  Britton had good insight into her mental health functioning.  R. 193-94.

Dr. Houston diagnosed Britton with moderate Major Depressive Disorder and polysubstance dependence (early partial remission).  She assessed Britton's Global Assessment of Functioning score as 65.  R. 194.  She listed Britton's prognosis as "guarded," stating that continued individual therapy, group sessions, and psychotropic medications would likely be of benefit.  Dr. Houston stated, "[Britton's] symptoms continue to appear to be valid and pervasive and may be causing marked impairment

in her social and occupational functioning." R. 195. As for Britton's ability to work, Dr. Houston stated that Britton "appear[ed] to be a poor candidate for functioning in the workforce," but that "with intensive treatment and consistent psychotherapeutic intervention and if she becomes emotionally stable, she may be able to return to gainful employment in the future." R. 195.

Britton also received a consultative examination in internal medicine from John Norris, M.D, on June 6, 2011. R. 197-204. Britton reported problems with her left leg and hip beginning around age 13. She stated that she was admitted to Texas Children's Hospital for "four or five days" and that "a screw or pin was placed in the left hip." She reported a subsequent, gradual shortening in her left leg as compared to her right. She stated that the severe pain in her left hip had led to her alcohol and drug addictions, but that she now was sober. However, in the past six months, her leg and hip pain had worsened. R. 198.

Dr. Norris' physical examination of Britton revealed that she walked with a slight limp on the left side. Dr. Norris noted a 1.5 inch shortening of the left leg as compared to the right, and some limitation in Britton's left hip motion. R. 199. He recorded his clinical impression as a past history of left hip pain "associated with problem at age 13 for which [Britton] had some minimally invasive internal fixation performed," with continued left hip and left leg pain, slight limp, and left leg

shortening since that time.  R. 200.

In July 2011, a state agency medical consultant reviewed Britton's records.  In reviewing mental health records, including Dr. Houston's examination, the consultant concluded that Britton's alleged limitations were "partially supported" by the evidence of record.  R. 217.  When assessing Britton's physical capabilities, the consultant considered Dr. Norris' examination and concluded that Britton's left hip pain could cause some limitations in her daily activities, indicating that Britton could stand or walk four or five hours in an eight hour workday.  R. 220, 226.  As for her mental capabilities, the consultant opined that Britton had moderate limitations in understanding, remembering, and carrying out detailed instructions, as well as moderate limitations in accepting instructions, responding to criticism, responding to change, and completing a normal workday without interruption from psychologically-based symptoms.  R. 227-30.  However, she assessed Britton with no significant limitations in working in coordination with others, interacting appropriately with the general public, getting along with coworkers, or understanding, remembering, and carrying out short and simple instructions.  R. 227-28.

In December 2011, Britton began treatment at Career and Recovery Resources for her substance abuse issues, reporting that she had not used drugs since October 2010.  R. 231-50, 265-68.  Britton reported that she had no problems with her

employment and was planning to go to school.  R. 236.[2]  Britton stated that she, along with her children, were dependent in her parents' home and that family and social problems were then "extremely" troubling to her.  She reported that she was not taking medications.  R. 237.  Inconsistently with other claims of leg and hip pain, the assessment form reflects that Britton denied suffering from a chronic painful condition.  R. 238.  She reported psychological symptoms of depression and paranoia and indicated that she intended to see a doctor and resume medications in January 2012.  R. 239-41.

The record also contains a progress report from Career and Recovery Services dated April 5, 2012.  R. 265-68.  The report stated that Britton continued to participate in treatment and had a positive attitude and positive interactions with peers and staff. Britton had complied with attendance requirements and was striving to improve herself.

On May 1, 2012, Britton appeared with her attorney for an administrative hearing.  She testified that she had graduated from Career and Recovery Services in April 2012 and was currently homeless.  She remained on probation.  She testified that

---

[2]     Although Britton stated at the time that she had been employed full-time for three years, R. 235, this self-report is contradicted by other statements by Britton and by other evidence of record.  *See, e.g.*, R. 109 (SSA summary earnings report); R. 117 (job history chart completed by Britton); R. 122 (work history report completed by Britton).

she was taking Seroquel, Celexa, and trazodone daily.  She further testified that she had problems getting along with others and was scared that other people would try to hurt her or would talk about her.  R. 40-41.

## II.   **SUMMARY JUDGMENT STANDARD**

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P.  56(a).  *See Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).  "An issue is material if its resolution could affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations and quotation marks omitted).

## III.   **STANDARD OF REVIEW**

Judicial review of the Commissioner's denial of disability benefits is limited to

two inquiries: first, whether the final decision is supported by substantial evidence on the record as a whole and, second, whether the Commissioner applied the proper legal standards to evaluate the evidence. *See Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).  "Substantial evidence" is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Audler*, 501 F.3d at 447 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  It is more than a mere scintilla and less than a preponderance. *Id*.; *Perez*, 415 F.3d at 461; *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

When applying the substantial evidence standard on review, the court scrutinizes the record to determine whether such evidence is present. *Perez*, 415 F.3d at 461; *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  In determining whether substantial evidence of disability exists, the court weighs four factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Perez*, 415 F.3d at 462 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)).  If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. *Id.* at 461 (citing *Richardson*, 402 U.S. at 390); *Watson v. Barnhart*, 288 F.3d 212, 215

(5th Cir. 2002).  Alternatively, a finding of no substantial evidence is appropriate if no credible evidentiary choices or medical findings support the decision.  *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).  The court may not, however, reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.  *Audler*, 501 F.3d at 447; *Masterson*, 309 F.3d at 272.  In short, conflicts in the evidence are for the Commissioner, not the courts, to resolve.  *Perez*, 415 F.3d at 461; *Masterson*, 309 F.3d at 272.

## IV.   ANALYSIS

### A.   Statutory Basis for Benefits

SSI benefits are authorized by Title XVI of the Social Security Act, and provide an additional resource to the aged, blind and disabled to assure that their income does not fall below the poverty line.  20 C.F.R. § 416.110.  Eligibility for SSI is based on proof of disability and indigence.  42 U.S.C. § 1382c(a)(3) (definition of disability); 42 U.S.C. §§ 1382(a) (financial requirements).  A claimant applying to the SSI program cannot receive payment for any period of disability predating the month in which he applies for benefits, no matter how long he has actually been disabled. *Brown v. Apfel*, 192 F.3d 492, 495 n.1 (5th Cir. 1999); 20 C.F.R. § 416.335.  Thus, the month following an application fixes the earliest date from which SSI benefits can be paid.  Eligibility for SSI, unlike eligibility for Social Security disability benefits, is not

dependent on insured status.

"Disability" is defined by the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(3)(A).  The law and regulations governing the determination of disability for SSI are the same as those governing determinations for Social Security disability benefits.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

## B.   <u>Determination of Disability</u>

When determining whether a claimant is disabled, an ALJ must engage in a five-step sequential inquiry, as follows: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment in Appendix 1 of the regulations; (4) whether the claimant is capable of performing past relevant work; and (5) whether the claimant is capable of performing any other work.  *Perez*, 415 F.3d at 461; *Newton*, 209 F.3d at 453.[3]   The claimant has the burden to prove

---

[3]      The Commissioner's analysis at Steps Four and Five is based on the assessment of the claimant's residual functional capacity ("RFC"), or the work a claimant still can do despite his or her physical and mental limitations.  *Perez*, 415 F.3d at 461-62.  The Commissioner assesses the RFC before proceeding from Step Three to Step Four.  *Id.*

disability under the first four steps.  *Perez*, 415 F.3d at 461; *Myers*, 238 F.3d at 619.

If the claimant successfully carries this burden, the burden shifts to the Commissioner

at Step Five to show that the claimant is capable of performing other substantial

gainful employment that is available in the national economy.  *Perez*, 415 F.3d at 461;

*Masterson*, 309 F.3d at 272; *Greenspan*, 38 F.3d at 236.  Once the Commissioner

makes this showing, the burden shifts back to the claimant to rebut the finding.  *Perez*,

415 F.3d at 461; *Newton*, 209 F.3d at 453.  A finding that a claimant is disabled or is

not disabled at any point in the five-step review is conclusive and terminates the

analysis.  *Perez*, 415 F.3d at 461 (citing 20 C.F.R. § 404.1520(a)).

In this case, the ALJ determined at Step One that Britton had not engaged in

substantial gainful activity since May 26, 2010, her application date.  At Step Two,

he found that Britton had two severe impairments: bipolar disorder/depression and

substance abuse.  At Step Three, the ALJ found that Britton's impairments, considered

singly or in combination, did not meet or medically equal an impairment listed in the

Social Security regulations.

Before proceeding to Step Four, the ALJ found that Britton had the residual

functional capacity ("RFC") to perform work as follows:

> [Britton] has the [RFC] to perform a full range of work at all exertional
> levels but with the following nonexertional limitations:  she can
> understand, remember, and carry out detailed[] but not complex
> instructions, make decision[s], attend and concentrate for extended

periods, accept instructions, and respond appropriately to changes in work settings.

R. 23.  At Step Four, the ALJ determined that Britton was capable of performing her past work as a salad counter attendant.  He therefore concluded that Britton was not disabled.

### C.   **Plaintiff's Arguments for Reversal**

#### 1.   **Step Two Finding**

Britton argues that the ALJ erred at Step Two when he found that Britton's left hip impairment was not severe.  Fifth Circuit precedent provides that an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."  *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (internal citation, quotation marks, and alteration omitted).

The ALJ in this case cited the *Stone* standard, but Britton argues that the standard was misstated.  The ALJ found that Britton's "alleged left hip pain is 'not severe' (20 C.F.R. 416.920(a) and (c) and SSR 96-3p) in that it causes ***no more than minimally*** vocationally relevant limitations."  R. 20 (emphasis added) (citing, *inter alia*, *Stone*, 752 F.2d 1099).  He also found that, when determining that Britton's mental impairments and substance abuse ***were*** severe, that those impairments had "more than a minimal effect" on her ability to perform work-related activities.  R. 20.

Britton argues that these portions of the ALJ's opinion misstate the *Stone* standard because *Stone* allows for ***no*** interference with the individual's ability to work. Plaintiff's Motion, at 6-7 (citing, *inter alia*, *Scroggins v. Astrue*, 598 F. Supp. 2d 800, 805-06 (N.D. Tex. 2009)).   This discrepancy has been found by *Scroggins* and other courts to be slight, but critical, given the Fifth Circuit's holding in *Stone* that the Court would "in the future assume that the ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect."  *Stone*, 752 F.2d at 1106.

Britton is correct that an ALJ's use of an incorrect severity standard is a legal error that requires remand.  *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000); *Stone*, 752 F.2d at 1106.  However, the Fifth Circuit also has made clear that it "does not require the use of 'magic words' for compliance with *Stone*," and that it will remand only "'when there is no indication the ALJ applied the correct standard.'" *Lynch v. Shalala*, 19 F.3d 14, at *3 (5th Cir. 1994) (quoting *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986)).  *See LeBlanc v. Chater*, 83 F.3d 419, at *2 (5th Cir. 1996).  In this case, the ALJ found at Step Two that "the records do not support ***any*** ongoing symptoms or treatment for [left hip] pain."  R. 20.  This finding supported the ALJ's conclusion that Britton did not have an impairment that would have "no more than minimally vocationally relevant limitations," R. 20, but would also serve to support

a finding under *Stone* that the alleged impairment would have "such minimal effect on [Britton] that it would not be expected to interfere with [her] ability to work." *See Stone*, 752 F.2d at 1101. Because the evidence supports the ALJ's finding under either standard, no remand is required. *See LeBlanc*, 83 F.3d 419, at *2.

Moreover, the ALJ's Step Two finding is supported by substantial evidence. The ALJ found that, although Britton claimed left hip pain, "the records do not support any ongoing symptoms or treatment for pain." R. 20. He considered the report from Dr. Norris' consultative examination on June 6, 2011, which noted Britton's complaints of pain, as well as her limp and some restriction of motion, and determined that the evidence did not show a severe impairment. This finding is supported by substantial evidence, in particular, Dr. Norris' report. Although Plaintiff cites to Dr. Norris' examination and the x-rays he ordered in support of her argument that her left hip impairment is severe, in fact these reports do not include any findings that Britton's ability to work was limited at all by her left hip.[4] Plaintiff also cites to her own testimony regarding the limitations, *see* Plaintiff's Motion, at 8 (citing record). However, the ALJ found that Britton's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent they

---

[4]     Dr. Norris' report noted Britton's limp and complaints of pain, but did not endorse any limitations on Britton's ability to work. R. 197-204.

were inconsistent with his assessment of her RFC. R. 24.  This finding was squarely

within the ALJ's province.[5]

Finally, although Britton asserts that the ALJ made an erroneous finding at Step

Two and therefore failed to accommodate Britton's pain in his RFC assessment, this

statement is inaccurate.  In fact, after finding Britton's leg and hip impairment to be

non-severe at Step Two, the ALJ considered Britton's pain at the later stages.  When

assessing Britton's RFC, the ALJ noted that Britton had "assert[ed] that she has

disabling pain," but determined "there is no evidence of treatment for pain in the

record or evidence of a severe medical impairment."  R. 24.  The ALJ's decision not

to accommodate Britton's leg or hip pain therefore was based on his evaluation of the

evidence of record at the RFC stage of the sequential analysis, and was not based

solely on his Step Two conclusion that the impairment was not severe.  For this

---

[5]     *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001) ("[T]he task of weighing the evidence is the province of the ALJ. Our job is merely to determine if there is substantial evidence in the record as a whole which supports the ALJ's decision"). Plaintiff also cites to the state consultant's report on her physical capabilities, characterizing the report as "opin[ing] that the [left hip] impairment prevents Plaintiff from performing the walking required of even light work." Plaintiff's Motion, at 9 (citing R. 220).  In fact, this report merely opines that Plaintiff was limited to four or five hours of standing or walking in an eight-hour work day. R. 220.  *See* R. 226 (narrative of state consultant's report states that Plaintiff is "somewhat limited in activities due to pain in hip" and "may be moody due to pain").  In addition, the ALJ afforded this assessment "no weight" based on the medical evidence of record and Plaintiff's testimony at the administrative hearing.  Again, this determination was properly within the ALJ's province.  *Chambliss*, 269 F.3d at 523.

additional reason, no remand is required.[6]

Britton has not provided a reason to overturn the ALJ's conclusions regarding the Step Two finding on pain associated with her left hip.  Summary judgment is granted for Defendant on this ground.

## 2.    RFC Finding

Britton argues that the ALJ's assessment of her RFC is not supported by substantial evidence.  In particular, Britton argues that the evidence of record does not support the ALJ's findings regarding her psychological or mental conditions, in particular, that she had only mild limitations in social functioning and in activities of daily living.

As for her social functioning, Britton asserts that the ALJ's finding of mild limitations was based upon the fact that Britton had not taken medications for mental illness.  This assertion is inaccurate.  Although the ALJ stated "the evidence does not show that she takes any medication for mental illness," R. 22,[7] he went on to provide

---

[6]     *See Herrera v. Commissioner of Social Security*, 406 F. App'x 899, 903 (5th Cir. 2010); *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987); *Chaparro v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987); *Jones v. Astrue*, 851 F. Supp. 2d 1010, 1015-18 (N.D. Tex. 2012).

[7]     Britton further asserts that "it was error for the ALJ to rely on Plaintiff's alleged failure to take medication which could affect her sobriety." Plaintiff's Motion, at 12. However, Britton cites to no evidence in the record suggesting that she was abstaining from psychiatric medications—whether based on medical advice or otherwise—because taking those prescribed medications could compromise her
(continued...)

several additional reasons supporting his finding of only mild limitations in social functioning.   These reasons included Britton's maintenance of interpersonal relationships, her appropriate interaction with Dr. Houston, her compliance with group meetings for substance abuse treatment, and her GAF scores.  R. 22.

Britton also argues that the evidence of record demonstrates greater limitations in social functioning.  As support, she cites to her hearing testimony and to her own reports of her symptoms, which state that she has had difficulty getting along with people throughout her life, that she fears of being alone, and that she has anger management problems.  Plaintiff's Motion, at 12 (citing R. 35-36, 40, 137, 139, 140). She also cites to evidence of her family and social problems, including homelessness. *Id*. at 13 (citing R. 228, 237, 243, 245).  Britton also directs the Court's attention to Dr. Houston's inventory of her symptoms (including isolation, paranoia, and impulsivity) and her inability to maintain employment due to her inability to get along with supervisors and co-workers.  *Id*. at 12-13 (citing R. 191-95).  As Britton notes, Dr. Houston concluded that her symptoms were "valid and pervasive" and "***may*** be causing marked impairment in social and occupational functioning," judging Britton a poor candidate for employment.  R. 195 (emphasis added).

---

[7]        (...continued)
          sobriety.  Because Plaintiff's challenge is not supported by any citation to the record, it fails.

Although Dr. Houston's report and the other evidence cited by Plaintiff could support more than "mild" limitations in social functioning, this Court's function is not to second-guess the ALJ, but merely to review for substantial evidence.[8]  Substantial evidence, as stated above, is more than a mere scintilla and less than a preponderance. *Audler*, 501 F.3d at 447; *Perez*, 415 F.3d at 461.  The ALJ considered, and cited to, the same parts of the record to which Britton directs the Court's attention.  *See* R. 22, 25.  Because the ALJ's finding is supported by substantial evidence, Britton's argument fails.

As for activities of daily living, Britton argues that the ALJ's finding of mild limitations is unsupported by the record.  In particular, Britton cites to evidence in the record that Plaintiff needs assistance cooking or remembering to take medications, that she is depressed and scared to be alone, and that she was homeless at the time of the administrative hearing and did not have custody of her three children.  Plaintiff's Motion, at 13-14 (citing R. 34, 136-37, 139-40, 192, 245).  However, the ALJ's finding refers to other evidence in the record that Britton was able to attend group meetings, care for her personal hygiene, care for her children, handle her money, and

---

[8]      *See Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("In applying the substantial evidence standard, we may not reweigh the evidence in the record, nor try the issues *de novo,* nor substitute the Court's judgment for the Secretary's, even if the evidence preponderates against the Secretary's decision.") (internal quotation marks, alteration, and citation omitted).

go to the park, church, and her children's school.  R. 22 (citing R. 134-41, 190-96).

Again, although Britton may find some evidence in the record to support her

arguments, the record contains substantial evidence supporting the ALJ's assessment

of her RFC.  *Audler*, 501 F.3d at 447; *Perez*, 415 F.3d at 461.

Summary judgment is granted for Defendant on Britton's challenge to the RFC

determined by the ALJ.

### 3.   Past Relevant Work

Britton argues that the ALJ erred when, at Step Four of his analysis, he found

that she was capable of performing her past relevant work ("PRW") as a salad counter

attendant.  The ALJ found in his written opinion that Britton "is capable of performing

[PRW] as a salad counter attendant" and that this PRW "does not require the

performance of work related activities precluded" by Britton's RFC.  R. 25 (citing 20

C.F.R. § 416.965).

SSA regulations define PRW as work done by claimant in the past fifteen years,

that was "substantial gainful activity" ("SGA"), and that lasted long enough for the

claimant to learn how to do it.  *See* 20 C.F.R. § 416.960(b)(1); 20 C.F.R. § 416.965(a).

Britton argues that her work as a salad counter attendant did not qualify as PRW, nor

did any of her other past work, because her earnings were insufficient to satisfy the

SGA requirement.  She claims that the monthly amount required for SGA in 2004 was

$810.00,[9] and that her 2004 wages of $600 per month therefore were too low to qualify.[10]

As an initial matter, the Court notes that the Social Security regulations do not identify wages earned as determinative of SGA, but instead state that the agency "use[s] several guides to decide whether the work you have done shows that you are able to do [SGA]." 20 C.F.R. § 416.974(a). The SSA regulations state that "[y]our earnings may show you have done [SGA]," and that "[g]enerally, . . . . our primary consideration will be the earnings you derive from the work activity." *Id.* § 416.974(a)(1). They further state, "However, the fact that your earnings were not substantial will not necessarily show that you are not able to do [SGA]." *Id.*[11]

In this case, the ALJ's finding about Britton's PRW is supported by the vocational expert's testimony that salad counter attendant was PRW. R. 42.[12] The

---

[9]    Plaintiff's Motion, at 15 (citing 20 C.F.R. § 416.974(b)). *See* Substantial Gainful Activity, http://www.ssa.gov/oact/cola/sga.html (last visited May 15, 2014).

[10]    Britton claims that she worked as a salad counter attendant for six months in 2004 and worked twenty-five hours per week (five hours per day for five days) at $6.00 per hour, for total wages of $600 per month. Plaintiff's Motion, at 15 (citing R. 117, 128).

[11]    *See also* 20 C.F.R. § 416.972(a) (work activity may be "substantial" "even if it is done on a part-time basis"); *id.* § 416.972(b) (work activity is "gainful" if it is done "for pay or profit"); 20 C.F.R. § 416.973(b) ("We consider how well you do your work when we determine whether or not you are doing [SGA]. If you do your work satisfactorily, this may show that you are working at the [SGA] level.").

[12]    R. 42 (When asked by the ALJ, "How can we classify the claimant's past relevant (continued...)

vocational expert was not asked to provide, and did not provide, any reasoning supporting her conclusion that Britton's salad counter work was PRW.   Although Britton now disputes this finding, she did not challenge the finding at the hearing when the vocational expert was present.  When the ALJ offered Britton's counsel the opportunity to ask questions of the vocational expert, counsel chose not to do so.  R. 43.

Moreover, although Britton claims that she earned only $600 per month in her work,[13] the record also contains evidence that Britton's earnings were significantly higher, and in fact sufficient to qualify as SGA.  In particular, the summary earnings query in the record, which apparently is a printout from the SSA, states that Britton's total earnings for 2004 were $13,530.74.  R. 109.  As stated above, Britton argues that the proper minimum amount for SGA in 2004 was $810 per month, or $9,720 per year.   Britton's earnings of $13,530.74 easily satisfy the SGA standard she cites.

Substantial evidence supports the ALJ's finding.  *See Audler*, 501 F.3d at 447;

---

[12]     (...continued)
         work?" the vocational expert answered, "Salad counter attendant.").  *See* R. 34 (ALJ commented that the salad bar job was the only work he was considering because there was "not enough earning in the others.")

[13]     Plaintiff's Motion, at 15 (citing R. 117, R. 128).  Both citations provided by Plaintiff refer to Plaintiff's own reports regarding her wages history.  In an Disability Report on an SSA form, Britton completed a Job History chart that lists a job as "food server" from June through December 2004, at $6 per hour, for twenty-five hours per week.  R. 117.  On a Work History Report, also on an SSA form, Britton reported the same work and wages.  R. 128.

*Perez*, 415 F.3d at 461. Because Britton has not shown that the ALJ's finding regarding her PRW was error, summary judgment is granted for Defendant on this issue.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. # 15] is **DENIED**.  It is further

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 16] is **GRANTED**.

A separate final judgment will issue.

SIGNED at Houston, Texas, this **15**<u>th</u> day of **May, 2014**.

<u>Nancy F. Atlas</u>
Nancy F. Atlas
United States District Judge